## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNIVERSITY VOLKSWAGEN, INC.,   )
  Plaintiff,         )
              )
v.               )
              )
VOLKSWAGEN OF AMERICA, INC.   )
  Defendant.        )
_____ )

### COMPLAINT

   Plaintiff, complaining of Defendant, alleges and says as follows:

1.  Plaintiff University Volkswagen, Inc. (hereinafter "University") is a corporation organized and existing under the laws of the State of New Mexico, with its principal place of business in Albuquerque, New Mexico.

2.  University is a new motor vehicle dealer and is a party to a franchise agreement with the Defendant.  A copy of the franchise agreement, also identified as the Dealer Agreement, is attached hereto as "Exhibit 1."

3.  University is a "Motor Vehicle Dealer" as defined by § 57-16-3(B) NMSA 1978.

4.  Defendant Volkswagen of America., Inc. (hereinafter "Volkswagen" or "VW") is a foreign corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in Herndon, Virginia.

5.  Volkswagen conducts business in, and has substantial contacts in, Bernalillo County, New Mexico.

6.  Volkswagen is a "Distributor" of motor vehicles as that term is defined by § 57-16-3(F), NMSA 1978.

## JURISDICTION

7.     The matter in controversy effectively exceeds the sum of $75,000.00, exclusive of interest and costs, and this Court has jurisdiction over this cause pursuant to 28 U.S.C. § 1332.

8.     Pursuant to 28 U.S.C. § 1391 (a) and (c), venue in this district court is proper because a substantial part of the events giving rise to University's claims herein occurred within the State of New Mexico and Defendant Volkswagen is a corporation subject to personal jurisdiction at the time of the filing of this Complaint.

## FACTS

9.     On or about September 3, 1997, Volkswagen and University signed a Volkswagen Dealer Agreement (hereinafter "Dealer Agreement"). The 1997 Dealer Agreement is the most recent amendment to the parties' franchise relationship, which began in Albuquerque in 1975.

10.     University's predecessor, Jack Price Volkswagen in Hobbs, New Mexico, signed the original dealer agreement in 1967, which was amended in 1997 to reflect a new name in Albuquerque.

11.     The Dealer Agreement, together with its Standard Provisions and all superceding state and federal laws governs the relationship between the parties.

12.     Pursuant to the Dealer Agreement, Volkswagen is obligated to provide new Volkswagen motor vehicles, parts and accessories to University and, in turn, University sells Volkswagen motor vehicles, parts and accessories to consumers as a retail sales establishment.

13.     During its time as a Volkswagen dealer, University has maintained good standing with Volkswagen and has cooperated with Volkswagen's programs and efforts to sell and service Volkswagen products.

14.     Prior to 2001, University operated from a combined facility for its Mazda, Saab and

Volkswagen franchises which allowed University to reduce its costs and overhead by sharing certain dealership operations among those franchises.

15.     In 2001, upon the demand of Volkswagen, University removed the other franchises from the facility, thereby providing Volkswagen with an exclusive facility.

16.     Also in 2001, at Volkswagen's demand, University expended in excess of $1 million to upgrade its facilities to comply with the "VW Marketplace" image standard, in order to better sell and service Volkswagen vehicles in the Albuquerque market

17.     The above-described upgrades, when completed, produced a state-of-the-art facility

18. which met the most rigorous Volkswagen brand standards.

19.     University's facility is centrally located on Interstate 25, within close proximity to Interstate 40.

20.     As a result of University's facility, location, and its sales and service performance, University adequately serves the sales and service needs of the Albuquerque market.

21.     Prior to 2007, Volkswagen had not expressed any displeasure with University's sales or service accomplishments, nor with its ability to meet the needs of the Albuquerque market.

22.     Prior to 2007, due in large part to the success of University in meeting the sales and service needs of the public, and in cooperation with University, Volkswagen closed an existing second dealership in the Albuquerque market.   University contributed to the resources Volkswagen used to close the second dealership.

23.     Notwithstanding Volkswagen's determination in 2001 that Albuquerque would not support two Volkswagen dealerships, in 2007 Volkswagen decided to place an additional dealership in the Albuquerque area, to provide greater market penetration for Volkswagen.

24.     Coincidentally, and without either consultation with University or other support,

Volkswagen more than doubled University's sales objectives incentives program threshold, to 1119 units annually, a level attained neither by University nor the Albuquerque market.

25.    Volkswagen's unjustified increase in University's sales objectives predictably caused University to fail to meet Volkswagen's revised sales performance standard.

26.    As a result of Volkswagen's increase in University's sales objective threshold and the resulting recharacterization of University's performance as inadequate, Volkswagen withheld from University further payments under Volkswagen's sales incentive programs.

27.    Upon information and belief, in 2007 Volkswagen used the unwarranted University VW sales objective increase, and resulting determination that University's sales performance failed to meet the new standard, to justify the appointment of an additional Volkswagen dealer in Albuquerque.

28.    On or about October 18, 2007, Volkswagen executed a Letter of Intent with Garcia Motorcars, LLC ("Garcia") evidencing its intent to establish, on or about December 1, 2008, a second Volkswagen dealership in Albuquerque at 9640 Eagle Ranch Road, NW.

29.    On or about October 26, 2007, Volkswagen provided notice to University, pursuant to §57-16-5(P) NMSA 1978, that Volkswagen intended to open an additional Volkswagen dealership at 9640 Eagle Ranch Road, NW, in Albuquerque, New Mexico, on or about December 1, 2008. A copy of the October 26, 2007 letter is attached hereto as "Exhibit 2."

30.    The threat of a second Volkswagen dealership less than seven miles from University's location caused, and continues to cause, University to suffer losses in sales, decreased inventory, instability among employees, and other impacts on sales and service operations.

31.    Volkswagen and Garcia delayed the scheduled opening of the second Volkswagen dealership, in part, because of Volkswagen's changes to the facility image requirements for new

Volkswagen dealers.

32.    On or about May 19, 2009, Volkswagen executed an Amended and Restated Letter of Intent with Garcia Motorcars, LLC confirming its intent to establish the second Volkswagen dealership in Albuquerque at 9640 Eagle Ranch Road NW and commence operations on or before September 29, 2009.

33.    In correspondence dated May 26, 2009 (copy attached as "Exhibit 3"), Volkswagen again notified University that Volkswagen would establish an additional dealership at 9640 Eagle Ranch Road, NW, in Albuquerque, New Mexico, and that "the new dealership will open after 90 days from your receipt of this letter."

34.    Volkswagen's May 26, 2009 letter again stated that Volkswagen provided the letter in compliance with §57-16-5(P) NMSA 1978, which requires a distributor (Volkswagen) to provide a same line-make dealer (University), located in the relevant market area wherein the distributor proposes to establish the additional dealership, with ninety (90) days written notice of its intention to establish an additional franchise.

35.    The site of the proposed additional dealership location, 9640 Eagle Ranch Road, NW in Albuquerque, New Mexico, is less than seven miles from University's location.

36.    Volkswagen's correspondence and other records demonstrate that Volkswagen intended to establish the second Volkswagen dealership under the operation of Garcia Motorcars, LLC dba Garcia Volkswagen on or about September 29, 2009.

37.    Volkswagen never offered the second dealership opportunity to University.

38.    The extreme economic and financial upheavals experienced by the United States' in 2008 and 2009 significantly altered the business landscape.  Those conditions have been especially harsh on the automotive industry.  Although in late 2010 there was some slight rebound,

consumer demand for new vehicles has substantially declined from 2007 levels.

39.     Motor vehicle dealerships, with very limited revenue, have been under extreme pressure to cover their overhead. Many dealerships failed during 2008-09, due to a lack of sales and/or an inability to maintain or obtain credit with which to buy inventory. Nationwide new motor vehicle sales have decreased below 12 million units annually, which is down from the approximately 16 million annual units sold each year of the decade leading up to the 2008-9 recession.

40.     Albuquerque was significantly impacted by the economic downturn, and, upon information and belief, the resulting market for new motor vehicles, including Volkswagens, has been diminished. Upon information and belief, any increases in population have not resulted in significant increases for vehicles in the segments Volkswagen serves.

41.     In a time when major vehicle manufacturers are drastically cutting back on their dealer networks, Volkswagen's decision to add a new dealer in University's relevant market area is unsupported and inequitable. In contrast, Volkswagen has and continues to eliminate Volkswagen dealers in nearby states.

42.     University will suffer damage if Volkswagen establishes an additional dealership. In particular, University will suffer lost sales and service business due to the additional dealership, resulting in lost profits, which will greatly exceed $75,000. Volkswagen's mere announcement of its intent to open a second dealership has already damaged University. University's vehicles sales revenues in 2007, of more than $33 million declined after VW's announcement to $22 million in 2010. Additionally, the announcement has already impacted, and the opening of the dealership will continue to impair, the value of University's facility and franchise, and place the entire franchise operation in jeopardy as a result of the lost revenue, lost personnel and the

ongoing costs arising from University's compliance with Volkswagen's facility demands. University's damage greatly exceeds $75,000.

43.     On September 3, 2009, shortly after receiving Volkswagen's notice letter, University filed an action in this Court alleging a violation of §57-16-5(P) NMSA 1978 of the New Mexico Motor Vehicle Dealers Franchising Act.

44.     Volkswagen did not proceed to establish the additional dealership, pending a decision from this Court on the merits of University's suit.

45.     This Court addressed University's action on December 9, 2010, *sua sponte,* and dismissed University's Complaint without prejudice, finding that University's Complaint did not allege a "live, actual controversy," and did not indicate that Volkswagen's notice "contained a specific date time frame for the establishment of a new dealership."

46.     Upon information and belief, Garcia Motorcars LLC and Volkswagen recently redetermined to establish the additional dealership at 9640 Eagle Ranch Road, NW, Albuquerque, New Mexico 87114 within the next thirty (30) days in reliance upon its May 26, 2009 notice letter to University.

## COUNT I
## Violations of the New Mexico Motor Vehicle Dealers Franchising Act

47.     Plaintiff University realleges Paragraphs 1 through 46 as if fully set forth herein.

48.     § 57-16-5(P) NMSA 1978 provides that it is unlawful for a manufacturer to establish a same line-make franchise in the relevant market area of an existing motor vehicle dealer if the addition would be inequitable to the existing dealer. §§ 57-16-11 and -13 NMSA 1978 also provide a mechanism for existing motor vehicle dealers to protest the establishment of additional motor vehicle dealers in violation of § 57-16-5(P) NMSA 1978.

49.     University is a motor vehicle dealer within the meaning of § 57-16-3(B) NMSA 1978.

50.    Volkswagen is a distributor within the meaning of § 57-16-3(F) NMSA 1978.

51.    By letter dated May 26, 2009, Volkswagen informed University that it intended to establish an additional Volkswagen franchise at 9640 Eagle Ranch Road, NW, Albuquerque, New Mexico 87114 ("the Additional Point") 90 days from University's receipt of the letter.

52.    The Additional Point is not a relocation of an existing franchise.

53.    That Additional Point will sell new Volkswagen motor vehicles.  As such, it will sell the same line-make as is presently represented by University.

54.    The proposed site for the Additional Point is within seven miles of University.  The proposed site for the additional dealer is within University's "relevant market area" as defined by § 57-16-3(Q) NMSA 1978.

55.    The opening of the Additional Point would be inequitable to University for, among other reasons:

   a. University is meeting the needs of the people of Albuquerque regarding the selling and servicing of Volkswagen motor vehicles;

   b. At Volkswagen's demand, University recently expended in excess of $1 million to expand its facilities in order to meet the sales and service needs of the entire Albuquerque area.  The size and permanency of this investment requires additional time to service the resulting debt;

   c. University removed the Mazda and Saab franchises from its facility at Volkswagen's demand.  It did so, with the expectation that it would continue to serve the entire Albuquerque area as the sole Volkswagen dealer;

   d. Adding an additional dealer at this time is unwarranted and inequitable following on the heels of a historic slump in motor vehicle sales and in the economy in general;

   e. Adding an additional dealer within seven miles of University will impact sales and service revenue at University and otherwise inequitably impact University's financial well being;

   f. Customer convenience will not be served by adding a dealer at the proposed location.

56.    Volkswagen has not demonstrated that the sales and service needs of the public require

an additional dealership, or that the addition of a new Volkswagen dealership would improve the sales and service to the people of Albuquerque.

57.     To the extent that Volkswagen's sole motivation for the addition of a new franchise in the Albuquerque area was to achieve further market penetration, or an enhanced market share, its actions are expressly prohibited by § 57-16-5(P) NMSA 1978.

58.     Even if the Albuquerque market could support a second Volkswagen dealership, Volkswagen's identification of a location in University's relevant market area inequitably impacts University.  Upon information and belief, the decision to place the Additional Point at the proposed location was based on factors other than the sales and service needs of the public or any other factor enumerated by § 57-16-5(P) NMSA 1978.

59.     In any event, Volkswagen has not, and cannot, show that the requirements for adding a new dealership within University's relevant market area are present as required by § 57-16-5(P) NMSA 1978.

## COUNT II

### Request for Declaratory Judgment

60.     Plaintiff University realleges Paragraphs 1 through 59 above, as if fully set forth herein.

61.     Defendant Volkswagen is a distributor of Volkswagen vehicles as defined by § 57-16-3(F) NMSA 1978.  Volkswagen has provided University with notice that it has a present intention to establish an additional Volkswagen dealership within University's relevant market area.

62.     § 57-16-5(P) NMSA 1978 makes it unlawful for a distributor to establish an additional same line-make dealership within an existing dealer's relevant market area if the establishment of the additional dealership would be inequitable to the existing dealer.

63.     There is an actual and substantial controversy between Plaintiff and Defendant as to whether Defendant's proposed establishment of an additional Volkswagen dealership would be inequitable to University.  The controversy is not an abstract question or hypothetical and instead is actual and urgent and in need of immediate resolution by this Court, evidenced by Volkswagen's written communications to University expressing its present and continued intention to establish the additional dealership.

64.     Plaintiff requests this Court issue a declaratory judgment determining Volkswagen's proposed establishment of an additional dealership in University's relevant market area would be inequitable to University.

65.     Plaintiff demands a jury trial on all issues so triable.

        WHEREFORE, Plaintiff University demands the following relief:

   1)      That the Court issue an order pursuant to the statute,   declare that Volkswagen's
           proposed establishment of an additional dealership is   inequitable to University
           and therefore prohibited by New Mexico law.

   2)      That it be awarded its costs, interest and attorney fees as allowed by law; and

   3)      That it be awarded such other and further relief as the Court may deem just and
           proper.

This the 20th day of January, 2011.

                              _____
                              Bryan Query
                              2632 Mesilla St NE
                              Albuquerque, NM 87110
                              (505) 889-8099
                              blq7@comcast.net


                              and

                              Robert C. Byerts
                              Fla. Bar 440817
                              Bass Sox Mercer
                              2822 Remington Green Circle

Tallahassee, FL 32312
(850) 878-6404
(850) 942-4869
rbyerts@dealerlawyer.com

Attorneys for University VW

**VOLKSWAGEN**



June 13, 1997

3800 Hamlin Road
Auburn Hills, MI 48326
Tel. (248) 340-5001
Fax (248) 340-5010

Clive Warrilow
President &
Chief Executive Officer

TO:   Volkswagen Dealers
RE:   Volkswagen Dealer Agreement and 1997 Operating Standards

Ladies & Gentlemen:

Enclosed are your new Dealer Agreement, Standard Provisions and 1997
Dealer Operating Standards.  Please take the time to review all three of these
documents.

The new Volkswagen Dealer Agreement was a team effort, which arose out
of a true partnership between Volkswagen and its dealers.  For nearly a year,
we have worked intensively with your representatives on the President's
Council to develop the new Volkswagen Dealer Agreement.  Dealer
concerns were heard and every significant concern your representatives
expressed is incorporated in the new Dealer Agreement Standard Provisions
and in the 1997 Operating Standards.

We trust you will agree that Volkswagen's commitment to the
manufacturer-dealer relationship is reflected in these documents.  We are
confident that they will help us meet the expectations of the large numbers
of new and returning customers who will be visiting your stores to see our
exciting product line in the years ahead.  We are in this business together,
and feel confident the results will be gratifying for both of us.

Yours truly,

EXHIBIT 1

# VOLKSWAGEN
## DEALER AGREEMENT



1. **APPOINTMENT.** Volkswagen of America, Inc. ("VWoA"), having a place of business at 3800 Hamlin Road, Auburn Hills, MI 48326, appoints **University Volkswagen, Inc.** ("Dealer"), doing business under the fictitious name **N/A**, having its place of business at **5150 Ellison NE, Albuquerque, NM 87109,** as an authorized dealer in Volkswagen brand motor vehicles and genuine parts and accessories therefor. Accordingly, the parties agree as follows:

2. **STANDARD PROVISIONS.** The Dealer Agreement Standard Provisions (the "Standard Provisions") (Form No. 97vwstdp), the Dealer Operating Plan (the "Operating Plan") and the Volkswagen Dealer Operating Standards (the "Operating Standards") are part of this Agreement. Any term not defined in this Agreement has the meaning given such term in the Standard Provisions.

3. **OWNERSHIP AND MANAGEMENT.** To induce VWoA to enter into this Agreement, Dealer represents that the persons identified in the Statement of Ownership and Management, which is attached as Exhibit A, are Dealer's Owners and Executives. VWoA is entering into this Agreement in reliance upon these representations, and upon the continued provision by such persons of their personal services in fulfillment of Dealer's obligations under this Agreement. Accordingly, Dealer agrees there will be no change in Dealer's Owners without VWoA's prior written consent, and no change in Dealer's Executives without prior notice to VWoA.

4. **MINIMUM FINANCIAL REQUIREMENTS.** Dealer agrees to comply and maintain compliance with the minimum financial requirements established for Dealer annually in accordance with the Operating Plan and the Operating Standards. Throughout the term of this Agreement those minimum financial requirements are subject to revision by VWoA, after review with Dealer, in light of operating conditions and the development of Dealer's business and business potential.

5. **DEALER'S PREMISES.** VWoA has approved the location of Dealer's Premises as specified in the Dealer Premises Addendum, attached as Exhibit B. Dealer agrees that, without VWoA's prior written consent, it will not (a) make any major structural change in any of Dealer's Premises, (b) change the location of any of Dealer's Premises or (c) establish any additional premises for Dealer's Operations.

# VOLKSWAGEN



5.    The following persons are Dealer's Officers:

**Name and Address**                                **Title**

Jack T. Price                                       President
8700 LaSala Del Centro
Albuquerque, NM  87111

Kay A. Price                                        Secretary/Treasurer
8700 LaSala Del Centro
Albuquerque, NM  87111

6.    The following person is the Authorized Representative of Dealer.  As such, this person is an
agent of Dealer, and VWoA is entitled to rely on this person's authority to make all decisions on behalf
of Dealer with respect to Dealer's Operations.

**Name and Address**                                **Title**

Jack T. Price                                       President

Dealer hereby certifies that the foregoing information is true and complete as of the date below. VWoA
has entered into this Agreement in reliance upon the qualifications, and the continued provision of
personal services in the ownership and management of Dealer by, the persons identified above.

This Exhibit cancels any prior Statement of Ownership and Management.

Dated: ___9/3___, 19 _97_

VOLKSWAGEN OF AMERICA, INC.

By: _Robert G. Dunn_                                By: _____
    Robert G. Dunn                                      Stuart Hamilton
    Regional Team Leader                                Area Executive

DEALER

By: _____
    Jack T. Price
    President

2                                                   Form 97VWXA : h/97diragr/Vwxa

# VOLKSWAGEN

**EXHIBIT A**
TO DEALER AGREEMENT DATED
_____ 9/3 , 19 97 .



## STATEMENT OF OWNERSHIP AND MANAGEMENT

1. Dealer firm name:

   **University Volkswagen, Inc.  d/b/a  N/A.**

2. Principal place of business:

   **5150 Ellison NE, Albuquerque, NM 87109.**

3. Dealer is a
   - ☐ proprietorship
   - ☐ partnership
   - ☐ limited liability company
   - ☒ corporation, incorporated on **11/76** under the laws of the State of New Mexico.

4. The following persons are the beneficial and record owners of Dealer:

| Name and Address of Each Record and Beneficial Owner of Dealer | If a Corporation, Number and Class of Shares Number | Class | Percentage of Ownership of Record in Dealer |
|---|---|---|---|
| Jack T. Price<br>8700 LaSala Del Centro<br>Albuquerque, NM 87111 | 101,000 | Common | 100% |

☐ See Exhibit A1 for additional information.

# VOLKSWAGEN



6. EXCLUSION OF WARRANTIES. EXCEPT FOR DISTRIBUTOR'S WARRANTIES, AND EXCEPT AS PROVIDED IN ARTICLE 9(1) OF THE STANDARD PROVISIONS, THERE ARE NO EXPRESS OR IMPLIED WARRANTIES OR OBLIGATIONS OF THE MANUFACTURER OR DISTRIBUTOR AS TO THE QUALITY OR CONDITION OF AUTHORIZED PRODUCTS, OR AS TO THEIR MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, AND, TO THE EXTENT PERMITTED BY LAW, DEALER WILL EXCLUDE ANY AND ALL SUCH WARRANTIES AND OBLIGATIONS IN ITS SALES OF AUTHORIZED PRODUCTS.

7. TERM. The term of this Agreement begins on the date of its delivery to Dealer or on January 1, 1997, whichever is later. This Agreement shall continue in effect until terminated by either party or superseded by a new Dealer Agreement with VWoA, whichever is earlier.

8. GOVERNING LAW. This Agreement will be construed in accordance with the laws of the State of New Mexico . Should the performance of any obligation under this Agreement violate any valid law of such jurisdiction, then this Agreement shall be deemed modified to the minimum extent necessary to comply with such law.

9. ADDITIONAL TERMS AND CONDITIONS. The Addenda attached hereto as Exhibits A through B are part of this Agreement, and are incorporated into this Agreement by this reference. Each may be canceled or superseded at any time by mutual agreement of Dealer and VWoA, through the later execution by both parties of a replacement, which then shall be deemed part of this Agreement.

DATED: _____9/3_____, 19 _97_

VOLKSWAGEN OF AMERICA, INC.

BY: _____
Robert G. Dunn
Regional Team Leader

BY: _____
Stuart Hamilton
Area Executive

DEALER

BY: _____
Jack T. Price
President

2

Form 97VWA:hlogc\97dlragr

# VOLKSWAGEN

**EXHIBIT B**
TO DEALER AGREEMENT DATED
_9/3_ , 19 _97_ .



## DEALER PREMISES ADDENDUM

1.     Dealer firm name:

    University Volkswagen, Inc.  d/b/a  N/A.

2.     VWoA has approved the location of the following premises, and no others, for Dealer's Operations:

    a.     Sales Facilities:

        5150 Ellison NE, Albuquerque, NM 87109

    b.     Authorized Automobile Storage Facilities:

        5150 Ellison NE, Albuquerque, NM 87109

    c.     Service Facilities:

        5150 Ellison NE, Albuquerque, NM 87109

    d.     Genuine Parts Storage Facilities:

        5150 Ellison NE, Albuquerque, NM 87109

    e.     Used Car Lot:

        5150 Ellison NE, Albuquerque, NM 87109

Dealer hereby certifies that the foregoing information is true and complete as of the date below.

This Exhibit cancels any prior Dealer Premises Addendum.

Dated: _9/3_ , 19 _97_ .

**VOLKSWAGEN OF AMERICA, INC.**

By: _Robert G. Dunn_
    Robert G. Dunn
    Regional Team Leader

By: _[signature]_
    Stuart Hamilton
    Area Executive

**DEALER**

By: _[signature]_
    Jack V. Price
    President

Form 97VWXB:h\ogc\97dir.agr

# Volkswagen of America, Inc.



June 2, 1997

3800 Hamlin Road
Auburn Hills, MI 48326
Tel. (248) 340-5000

Mr. Jack T. Price
President
University Volkswagen, Inc.
5150 Ellison NE
Albuquerque, NM  87109

Dear Mr. Price:

We are pleased to advise you that Volkswagen AG has authorized your use of the word "Volkswagen" in the business name, University Volkswagen, Inc., for your dealership.

This authorization is limited to the business or corporate name stated in the preceding paragraph and does not cover any other business or corporate name containing the word "Volkswagen" which you may wish to adopt in the future. Moreover, the present authorization is limited to your present firm or corporation. It does not extend to any subsidiary or affiliate of your firm or corporation, and it is not transferable.

The authorization granted in this letter shall automatically terminate in the event that you cease to be a franchised Volkswagen dealer and also in the event of a sale of your business, a merger of your corporation, the liquidation or bankruptcy of your firm or an assignment of assets of your firm to an assignee for the benefit of creditors.

Moreover, Volkswagen AG reserves the absolute and unqualified right to revoke the authorization at any time, in its sole and absolute discretion, with or without cause, by mailing or causing Volkswagen of America, Inc., to mail written notice of such revocation to you.

Upon termination of this authorization by reason of any of the events described, as well as upon receipt of the written revocation referred to, you shall (a) take all necessary steps to forthwith effect a legal change of your business or corporate name eliminating the word "Volkswagen" therefrom and (b) thereafter immediately discontinue the use of the word "Volkswagen" in your business or corporate name.

- 2 -

You shall not be entitled to any compensation whatsoever in the event of termination or revocation of this authorization.

This authorization is subject to all applicable provisions of your present and future Volkswagen dealer agreements.

Please sign the enclosed copy of this agreement for consent and return it to us. The authorization contained herein will be effective only after we shall have received the said copy duly signed by you.

Regards,

*Ron Takashima*

Ron Takashima
Dealer Franchising

Signed in agreement with and in acceptance of the above terms.

_____          9/8/97
(Signature of Dealer Representative)          (Date)

### EXECUTIVE SUMMARY OF CHANGES
### TO 1997 VOLKSWAGEN DEALER AGREEMENT
### AND DEALER OPERATING STANDARDS

## *DEALER AGREEMENT*

### TERM

The Agreement has a perpetual term, instead of five-year terms as used in the past. This reflects the current statutory environment. (AE teams retain the discretion, as at present, to use interim agreements with stated terms, if serious deficiencies or improvement commitments exist.) *(Agreement, Paragraph 8)*

### DISPUTE RESOLUTION

The Agreement requires mandatory non-binding arbitration or, at the dealer's option, voluntary binding arbitration, before either party may initiate litigation.  This will permit a fair hearing of the issues less expensively and much more quickly than is typical of litigation today. It is Volkswagen's experience that when there is a forum for discussing differences with a qualified, impartial third party, disputes are almost always resolved. *(Standard Provisions, Article 13)*

### PERFORMANCE EVALUATIONS

There will be periodic performance evaluations of the dealership and required documentation of deficiencies. These evaluations will take place at least annually. There will also be a method for dealer evaluation of AE Team performance. *(Standard Provisions, Article 11)*

### OTHER CHANGES

#### *Area of Responsibility*

- The dealer's area of responsibility is based on census tract information. It is possible that as this technology develops, the Operating Plan for each dealer would specifically define that dealer's area of responsibility. *(Standard Provisions, Article 16, Paragraph 6)*

#### *Trademarks*

- The trademark section of the Standard Provisions has been strengthened to reflect new terms of Volkswagen's importer agreement with its parent company, which owns the trademarks. These changes prohibit the dealer from sub-licensing our trademarks without our permission, and are intended to improve Volkswagen's ability to take action against unauthorized trademark use. *(Standard Provisions, Article 4)*

#### *Vehicle Modifications*

- A provision has been added which addresses consumer requests for performance tuning, and makes the dealer responsible for the consequences of an unauthorized modification of authorized products which adversely effects safety or emissions. *(Standard Provisions, Article 5, Paragraph 6)*

2

### Termination by Volkswagen

- Failure to adhere to customer satisfaction standards, after a significant notice and cure period, and subject to the provisions of state law, is explicitly stated as a ground for termination. *(Standard Provisions, Article 14, Paragraph 2)*

- The notice period for termination by Volkswagen for certain serious violations of the Agreement has been changed from 90 days to 30 days, unless a greater notice period is required by statute. This is because some state statutes actually provide for a shorter notice period than the 90 days formerly required under the contract; in the few cases where VWoA initiates termination, serious breaches exist and faster action is better for the organization. The dealer still has all protest rights allowed under state law. *(Standard Provisions, Article 14, Paragraph 2)*

### Open Account

- A provision has been included permitting revocation of dealer's open parts account if dealer fails to provide financial and operating statements in the format required by Volkswagen. This is because, without such documents, VWoA has no idea whether the dealer can meet its unsecured obligations to VWoA. *(Standard Provisions, Article 10, Paragraph 2)*

### Damage Disclosure

- Volkswagen has committed to disclosing damage of which it is aware and which it repaired prior to delivering a vehicle to the dealer. *(Standard Provisions, Article 5, Paragraph 4; Article 8, Paragraph 10)*

### Payments to Dealer Employes

- The dealer may direct Volkswagen not to make payments to the dealer's employes. *(Standard Provisions, Article 8, Paragraph 6)*

### Electronic Submissions

- The dealer must communicate with Volkswagen, for order submission, warranty claims and all other matters, electronically. *(Standard Provisions, Article 9, Paragraph 3; Article 10, Paragraphs 1 and 2)*

### Termination Repurchases

- VWoA may permit the dealer to dispose of assets on his own upon termination, except cars, parts and signs, subject to certain conditions. *(Standard Provisions, Article 15, Paragraph 4)*

- Upon termination, Volkswagen will repurchase new, undamaged vehicles with up to 200 miles. Formerly, miled vehicles were not required to be repurchased at all. *(Standard Provisions, Article 15, Paragraph 1(a))*

### Succession

- Succession provisions have been greatly simplified. The dealer principal may apply for a Successor Addendum. The designated successor would follow Volkswagen's normal application process for an ownership transfer. If approved, the designated successor would be named on a Successor Addendum which would become part of the Dealer Agreement. Upon the owner's death, assuming the successor became the owner, the Dealer Agreement would continue uninterrupted. *(Standard Provisions, Article 12, Paragraph 4)*

3

**Signature Authority**

- The Area Executive will sign the Dealer Agreement for VWoA, with countersignature by an RTL or officer, in order to reinforce the new field structure. *(Standard Provisions, Article 17, Paragraph 2)*

## OPERATING STANDARDS

- The Operating Standards are incorporated by reference into the Dealer Agreement. *(Standard Provisions, Article 2, Paragraph 3; Article 11)*

- The new Standards specify more rigorously the required performance outputs in most areas rather than minimum resource inputs.

    - The dealer is required to deliver on customer satisfaction and sales objectives.

    - The dealer may organize his business as he finds most appropriate to achieve those objectives.

- In certain areas, especially for new dealers or new facilities, the Standards recognize that minimum resource inputs must still be measured.

    - Facility size and other specifications, which remain largely unchanged.

    - Minimum financial requirements, which remain unchanged.

    - Minimum training requirements.

- The Operating Plan will be prepared annually by the Dealer and the Area Executive, to document each dealer's performance as against the Standards and agree on corrective actions either party must take during the next measurement period.

h:\ogcvw\07\diragr\agmtsumm.doc\ 05/20/97 10:25

Sincerely,

Anthony Ray
Network Development Manager
Western Region
Volkswagen of America, Inc.

cc:     Corporate File



| | |
|---|---|
| Anthony Ray | Name |
| Network Development Manager | Title |
| VWoA Western Region | Department |
| 818.575.5603 | Phone |
| 818.575.5609 | Fax |
| anthony.ray@vw.com | E-Mail |

Certified Mail - Return Receipt Requested
Receipt No. 7007 0710 0004 3655 1444

October 26, 2007   Date

Jack T. Price
University Volkswagen, Inc.
5150 Ellison NE
Albuquerque, NM 87109

Volkswagen of America, Inc.
5388 Sterling Center Drive
Westlake Village, CA 91361

Re:  Notice of Intent to Establish Volkswagen Dealership

Dear Mr. Price:

    In accordance with N. M. Stat. Ann. § 57-16-5, Volkswagen of America, Inc. hereby gives notice of its intention to establish a Volkswagen dealership in Albuquerque, New Mexico.  The location of the dealership will be 9640 Eagle Ranch Road NW, Albuquerque, NM 87114.  We anticipate that the dealership will open on or about December 1, 2008.

    The decision to establish a dealership at this location was made following a review of the situation in the relevant market area which revealed the need for an additional dealership.  Among other things, the additional dealership will provide increased and more convenient sales and service facilities for present and prospective owners of Volkswagen vehicles and will generally further the public interest.

    If you have any questions or if I may be of any assistance, please do not hesitate to contact me or any member of my team.

Sincerely,

Anthony Ray
Network Development Manager Western Region
Volkswagen of America, Inc.

EXHIBIT 2



| Anthony Ray | Name |
| Network Development Manager | Title |
| VWoA Western Region | Department |
| 818.575.5603 | Phone |
| 818.575.5609 | Fax |
| anthony.ray@vw.com | E-Mail |

<u>Via Certified Mail Receipt # 7006 0100 0005 3377 1233</u>

J. Randy Price
University Volkswagen, Inc.
5150 Ellison NE
Albuquerque, NM 87109

May 26, 2009   Date

Volkswagen of America, Inc.
5388 Sterling Center Drive
Westlake Village, CA 91361

Dear Mr. Price:

I am writing to follow-up on my February 7, 2008 letter to you that was in response to your November 2007 letter to me and your January 2008 letter to Ron Stach. In your November 2007 letter you referenced my letter of October 26, 2007 in which we provided you with notice, pursuant to N.M. Stat. Ann. § 57-16-5, of our intention to establish a new Volkswagen dealership at 9640 Eagle Ranch Road, Albuquerque, New Mexico. In discussing that letter and our stated intention of opening a new dealership in Albuquerque, your November 2007 letter asserts that opening the dealership would violate New Mexico law, apparently because the dealership would be within 7 miles of your dealership.

In my February 7, 2008 letter I explained that contrary to the statements in your November 2007 letter, New Mexico law does not prohibit a manufacturer from opening a dealership within 7 miles of another dealership. All that the applicable statute requires is that the establishment of a new dealership not be inequitable to existing dealers. Opening the proposed new dealership is not inequitable to your dealership. The population in the Albuquerque area has grown by over 25% since 1990 and the number of households has grown by over 30%. Moreover, many of Volkswagen's competitors are represented in the market with at least two dealerships, which explains why penetration for the Volkswagen brand has been in decline. In view of this and other data, there are sufficient opportunities for the sales and after-sales businesses of two Volkswagen dealerships. Moreover, the Volkswagen brand needs a second dealership to meet the sales and service needs of public.

Accordingly, we wish to again inform you, pursuant to N.M. Stat. Ann. § 57-16-5, that Volkswagen of America, Inc. an operating unit of Volkswagen Group of America, Inc. ("VWoA") intends to establish a Volkswagen dealership at the above address; the new dealership will open after 90 days from your receipt of this letter.

EXHIBIT 3